

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00297-CV

Marcus Lesure **TRAVIS**, Sr. d/b/a Sip's Daiquiris N More,
Appellant

v.

**GUERRA & STUBBS PROPERTIES, LLC**, Eric Stubbs, Monica Trish Guerra, Copernicus
Guerra d/b/a Alpha 1 Properties,
Appellees

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2023-CI-15663
Honorable Angelica Jimenez, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
              Lori Massey Brissette, Justice
              Velia J. Meza, Justice

Delivered and Filed: July 29, 2026

AFFIRMED

In this commercial lease dispute, Marcus Leasure Travis, Sr., doing business as Sips'

Daiquiris N More, proceeding pro se, appeals from a final summary judgment rendered in favor

of his former landlord, Guerra & Stubbs Properties, LLC, Eric Stubbs, Monica "Trish" Guerra,

and Copernicus Guerra doing business as Alpha 1 Properties (collectively Guerra).  In one issue,

Travis complains that Guerra concealed defects that interfered with his use of the rented property. We affirm.

## I. BACKGROUND

In June 2021, Travis leased commercial property from Guerra. Travis used the property as a restaurant known as Sip's Diaquiris N More. The property suffered water incursions in June 2022, August 2022, and January 2023. Travis, according to his petition, alleged that the property also suffered from "wood-destroying insects," mold, and "structural damage." Travis alleged that the water incursions, "wood-destroying insects," mold, and "structural damage" interfered with his use of the property and that Guerra, as the landlord, was responsible for maintaining the property so as to avoid these conditions and remedying them.

Guerra disputed Travis's allegations. In an unsworn declaration, Trish testified:

After the lease was signed and before the Plaintiff [Travis] was obligated to pay rent, the Plaintiff was permitted to take possession of Suite 206. That period of possession was designed to allow the Plaintiff-tenant an opportunity to make tenant improvements and alterations to the suite. The Plaintiff had over three months to inspect and alter the premises.

As permitted by agreement, the Plaintiff did make alterations to the premises. He replaced an interior wall, which required him to remove and replace a significant amount of sheet rock exposing the studs. At no point during this process did the Plaintiff ever report the existence of insects, plumbing issues, or mold. In fact, over the course of the first year that the Plaintiff occupied the demised premises, the Plaintiff never complained of "wood destroying" insects, mold, or plumbing issues.

. . .

At no point were we ever made aware and had knowledge of any: structural issues, "wood destroying insects" infesting the property, plumbing issues with the Plaintiff's suite, or water damage issues. The prior tenant had never complained, and the Plaintiff never complained. He only began lodging the complaint when we attempted to enter his suite to repair the premises. It is the Defendants' contention that none of these issues exist. Further, at the time that the Plaintiff moved into the suite, there was never any indication of the presence of mold. We never saw mold and no tenant ever complained of mold. The Plaintiff never complained of mold prior to the summer of 2022. There is no basis for Plaintiff's claim that

Defendant[s] were aware of mold or that mold existed prior to his lease of the demised premises.

After the second water incursion, we attempted to gain access to make repairs to the property. We requested an inspection of the premises and for the Plaintiff to vacate and provide us access to make the repairs he demanded. In fact, Rodbuab[, the neighboring tenant,] also requested access and was denied the same. The Plaintiff continuously refused to allow us to make repairs and refused to vacate the space despite his claim that it was infested with mold. We sent a letter, via our attorney, to the Plaintiff demanding that he provide us access to assesses [sic] the suite, his complaints, and allow us an opportunity to remedy or repair and [sic] claimed defects. The Plaintiff refused to provide us access and refused to allow us entry to the property. He directed us to a lawyer, who never actually represented him and would not take our calls.

After the Plaintiff was out of the suite, we took possession and began assessing the Plaintiff's complaints. There was no structural damage to the wall and there was no infestation of "wood destroying" insects. We were able to easily rebuild the wall. The wall that Plaintiff references is just a partition wall made of wood. The partition wall consists of 2 by 4's and sheet rock. It is not structural as the building itself has a metal structural support system. When we replaced the partition wall there was nothing structural to do and no structural supports or charges were required. There is simply no basis for Plaintiff's claim related to structural defects. Moreover, during his tenancy, and before the water incursion, the Plaintiff never complained about structural issues impairing his ability to use the suite.

Guerra asserted that Travis unreasonably stopped making lease payments. As a result, Guerra locked Travis out of the property.

Thereafter, Travis sued Guerra, asserting claims for (1) breach of contract, (2) fraud in the inducement, (3) unjust enrichment, (4) violations of the Texas Deceptive Trade Practices Act ("DTPA"), and (5) violations of the implied warranty of suitability. In two motions for traditional and no evidence summary judgment, Guerra assailed all of Travis's claims. Travis, represented by counsel at the time, filed timely written responses to both motions. The trial court granted both of Guerra's motions, and it ultimately rendered a final judgment in Guerra's favor. Travis, who then began proceeding pro se, timely appealed.

## II. DISCUSSION

### A.     Pro Se Considerations

As a pro se litigant, Travis is held to the same standards as a licensed attorney and must comply with all applicable procedural rules. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978) ("There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves."). "The Texas Rules of Appellate Procedure require adequate briefing." *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010). It is well-settled that, under these rules, an appellant's brief must concisely state the facts, supported by record references, and contain a clear and concise argument for the contentions made with appropriate citations to authorities and to the appellate record. *See* TEX. R. APP. P. 38.1(g), (i); *Williams v. Stiles*, No. 04-18-00575-CV, 2020 WL 1277701, at *2 (Tex. App.—San Antonio Mar. 18, 2020, no pet.) (mem. op.).

While a pro se litigant must comply with the applicable procedural rules, application of the rules "may require a different result when the actor is not a lawyer." *Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 706 (Tex. 2021) (per curiam) (quoting *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005)). Courts should "review and evaluate pro se pleadings with liberality and patience." *Li*, 631 S.W.3d at 706 (citation omitted); *see also In re A.G.D.*, No. 07-15-00201-CV, 2016 WL 316879, at *2 (Tex. App.—Amarillo Jan. 22, 2016, no pet.) (applying standard to pro se appellate brief) (cited by *Li*, 631 S.W.3d at 706 n.5). In addition, the Texas Supreme Court "ha[s] admonished appellate courts to 'reach the merits of an appeal whenever reasonably possible' and cautioned that 'disposing of appeals for harmless procedural defects is disfavored.'" *Horton v. Stovall*, 591 S.W.3d 567, 570 (Tex. 2019) (per curiam) (quoting *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008)). "Nevertheless, it is 'settled' that 'an appellate court has some discretion to

choose between deeming a point waived and allowing amendment or rebriefing' and 'whether that discretion has been properly exercised depends on the facts of the case.'" *Horton*, 591 S.W.3d at 569–70 (quoting *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994)); *see also Phillips Motors Co. v. Million Auto Parts*, No. 04-19-00391-CV, 2020 WL 1159062, at *2 (Tex. App.—San Antonio Mar. 11, 2020, no pet.) (mem. op.) (affirming judgment where appellant waived complaints by failing to comply with briefing rules).

**B.    Standard of Review**

The movant for traditional summary judgment bears the burden of demonstrating that (1) no genuine issue of material fact exists, and (2) it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(a)(1); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to respond to the motion and present any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979); *see also Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). We must affirm a summary judgment if any of the grounds asserted in the motion are meritorious. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

A no-evidence motion for summary judgment permits a party to move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would bear the burden of proof at trial. TEX. R. CIV. P. 166a(a)(2). The nonmovant must then produce more than a scintilla of evidence to raise a fact issue as to each challenged element. *Lozada v. Posada*, 718 S.W.3d 262, 266 (Tex. 2025) (per curiam). "Less than a scintilla of evidence" exists when the evidence is so weak that it does no

more than create a mere surmise or suspicion of a fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence" exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

## C.    Analysis

Reading Travis's brief with "liberality and patience," *Li*, 631 S.W.3d at 706, the gravamen of his complaint is that Guerra "concealed pre-existing plumbing failures, mold, termites, and rot[.]" Travis repeats an iteration of this argument for his claims on fraudulent inducement, violations of the DTPA, and violations of the implied warranty of suitability.[1] Travis provides us with no accurate record citations for any evidence that he may have submitted or referenced in his summary judgment responses. Instead, Travis's record citations are to "CR.___LESURE__" and then to varying numbers. More importantly, Travis fails to explain how the evidence he fails to accurately reference creates a genuine issue of material fact in light of Trisch's testimony that Guerra had no knowledge of structural issues, "wood destroying insects," plumbing issues, or water damage issues affecting the leased property. *See* TEX. R. CIV. P. 166a(a)(1); *Provident Life & Accident Ins. Co.*, 128 S.W.3d at 216; *KPMG Peat Marwick*, 988 S.W.2d at 748.

Assuming without deciding that Guerra's knowledge of plumbing failures, mold, termites, and rot relates to an element of Travis's claims of fraudulent inducement, violations of the DTPA, and violations of the implied warranty of suitability, as briefed, Travis has failed to raise a genuine issue of material fact. Accordingly, the trial court did not err in granting Guerra a traditional summary judgment. *Accord Davenport v. EOG Res., Inc.*, No. 04-25-00062-CV, 2026 WL 1811019, at *3 (Tex. App.—San Antonio Jun. 24, 2026, no pet. h.) ("When—as here—both

---

[1] Travis raises no appellate arguments regarding his claims of breach of contract and unjust enrichment. Consequently, we must affirm summary judgment on those claims. *See Ontiveros v. Flores*, 218 S.W.3d 70, 71 (Tex. 2007) (per curiam) ("Because Flores did not assert error as to his claims for tortious interference with a contract, conspiracy, conversion, and fraud claims, he waived error as to them.").

traditional and no-evidence summary judgment motions are filed, we review the no-evidence motion first."), *with* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").  We overrule Travis's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice